Your Honors. My name is David Schultz. My colleague, Jennifer Ang, we're here representing the plaintiff and appellant Mark One and its owner, Ms. Rosanna Biondo. You need to speak up. We're here to represent Mark One and Ms. Biondo, the owner, who was certified under the Minority and Women Business Enterprise Program but is now excluded. So we're here to challenge the district court's order dismissing the complaint at the pleading stage. And so I thought I would address three primary issues. Let me ask you before you get started, can you help me with the difference between your Count One and Count Two equal protection arguments? It seems to me they're essentially the same thing. So they are, except that Count One is framed based on the severability clause in the governing statute. And it says that you can challenge any particular provision if you believe that that provision is unconstitutional. And so Count One was modeled after the severability provision to argue that the personal net worth limitation is unconstitutional, violates equal protection. And then Count Two addressed the program directly with the inclusion of the personal net worth limitation. And so it was based on the severability provision in the statute. So my basic question is, why isn't this just a rational basis case? Because I don't see a distinction being drawn here either with respect to race or gender or any of those suspect categories. It seems to me it's a question of net worth, which is not really either of the two that we normally deal with in terms of heightened scrutiny. So why isn't this just a rational basis case? So in answer to your direct question, Ms. Biondo is a woman. And she's being thrown out of the Minority and Women Business Enterprise Program because of the personal net worth. And I will tell you, so it's looking at a category of women, a category of minorities. I was going to start with a preliminary question, which is, would you agree, would strict scrutiny apply to your client suing Kansas City to establish this program? To establish the program? Yes. In light of the discrimination that existed in the 1996 ordinance that said that my client is subject to discrimination. No, I didn't. Yes. So my answer to your direct question. No, that was when the program started, in 96. Yes. It did start. It would be Morgan versus Katzenbach. It would be a rational basis applying whatever constitutional and other discriminatory things would, what would compel Kansas City to do this? So in the disparity study itself, the answer is found, to your question. And it states that the city, without providing this Minority and Women Business Enterprise Program, would be a passive participant in the discrimination that exists. If you sued and put the study on the table and said, enact the program, the study would not be reviewed under strict scrutiny, or Adirond is overruled. That's got to be the case. That's the whole point of Adirond. Let me, so first off, no matter what scrutiny we're applying on the pleading stage, it requires some evidence. No, no, no, not rational basis. There must be some evidence to suggest why it is you're doing something. My proposition is clearly strict scrutiny would not have applied before Kansas City had a program if a minority or if a DBE, a disadvantaged contractor, had sued to force the program. And if that's true, then why would strict scrutiny apply to the personal net worth reduction of the, quote unquote, of the program? So the city itself recognizes that if it doesn't provide this program, it is actively engaging and is a passive participant in discrimination. That's fine. That's politicians talking. That's not, that's not, the city is not the constitutional benchmark. Well, I believe that understood that, but the city's disparity study is based upon this, the cases, including within that, there is a discussion. Fine, but now you're in federal court and you've got the study behind you and you say now they have to adopt the program. And the federal court would look at that as an equal protection clause claim and look at under rational basis review whether the city was obligated to do it. I guess here's my problem with the whole assessment that this goes into the bucket of a rational basis versus are we discriminating against men and women because they're too successful? Okay. The, the, the district court's order cited, well, this is just like if, if Ms. Biondo was like Oprah Winfrey or the Sultan of Brunei. That's not right. You know, there's a, there's a, a very important quote from the Monterey case, which is cited in our briefs. And it said that every person is entitled to protection under the equal protection clause, number one. Number two, it says there is no de minimis equal protection and that's what's happening here. If what you're saying is that, you know, we're going to exclude women, we know you're discriminated against. We know that. That's admitted in the disparity studies. It's admitted in the governing ordinance. The ad-ram for- That was 9th Circuit 1997. A lot of water under the, a lot of water under the dam since then. Well, I don't believe that there's any de minimis protection under equal protection.  And I will, and I will, and I would urge this court to agree with that, number one. Number two, I would also urge this court in Adirond versus Slater, what the court held was that there was a statute that was deemed unconstitutional for being under-inclusive because it included, I'm sorry, it excluded those that were disadvantaged. That's exactly what we have here. This program recognizes that Mark One, Ms. Biondo, and many other men, I'm sorry, minority and women-owned businesses are being discriminated against. Well, why isn't this just proper narrow tailoring? I mean, I think that the courts have said that part, and our court has said that you'd to take into account factors other than the gender or the race. And this would be, at least we have said in passing, something that would be an acceptable way to narrowly tailor the goals of the program. Yes, if there were evidence to support the narrow tailoring. On the pleading stage motion, there was no evidence brought by the city. And I have discussed in our briefs, there are at least four ways as to why it is that this statute, by excluding Ms. Biondo, Mark One, and other men, minority and women, on the basis of that person met birth limit, is not narrowly tailored. Number one, just as in Adirond versus Slater, it's excluding those that are the subject of discrimination. So it grabs those that are subject to discrimination, saying, we know you can't compete in the private sector. You're shut out of that. We're going to exclude you from this. Adirond actually held a statute that was unconstitutional for that reason. Number two, it's also not narrowly tailored because it is a categorical exclusion. In Adirond, actually the revised statute that the court, so the earlier statute, was deemed unconstitutional because it excluded the disadvantaged, similar to here. There was an amended statute, and the Adirond versus Slater court said that was constitutional because A, it actually did narrow tailoring. B, maybe it put out hiring goals. In that case, there was a 5% hiring goal set aside for those that were disadvantaged to say, well, let's give you an opportunity. In our statute, there's categorical exclusion, zero hiring goals. The Adirond court said also, third reason, is that they said there's no, in the amended statute that was deemed constitutional, unlike the prior version, there was a recertification, a re-screening process to see, well, how are these companies being treated when they apply? Are they still being disadvantaged? In our case, there's no such provision. There's no hiring goals. There's no re-screening. There's no individual certification. How could the city take into account net worth in your position in a way that would be an appropriate narrow tailoring requirement? There would have to be an assessment as to whether or not the people that they admit are discriminated against are being discriminated against. But that's still in the program, though, right? I mean, don't you have to certify that you have been subject to discrimination of some sort? So in your view, how could the city take into account net worth or personal net worth? They would actually do what they needed to do to ensure narrow tailoring, which is to include a provision in there to assess, are you still subject to discrimination? I thought that's already in the program, though, isn't it? And that's to my point. So your position is that you cannot under no circumstances add in a personal net worth? No, that's not my position. My point is that because of the certification process that exists right now, where my client has been recertified for 25 straight years, there's been a requirement that they look at our certification and say, are you, Ms. Biondo, are you, Mark Run, being discriminated against? They have concluded every time that we are. And so that's why I don't think that the exclusion of the discriminated should survive scrutiny under any basis. And so my point is, is that they need to do in, they need to actually do their work, bring evidence to your owners to say we have looked at the circumstances. Do you have a case in which holding that narrow tailoring is required under rational basis review? No, Your Honor, that's not the law. And so my point, though, is that when you look at Adirond, they have rescreening, hiring goals, and an individual assessment of whether or not these applicants are subject to discrimination. And so when there's an assessment of all of those factors, they can then decide to recertify or not. With evidence before your owner to show that they're engaging in narrow tailoring. Because here's the problem. That's why this case should not have been dismissed at the pleading stage. They argue, without evidence, that the reason why they're doing this is because Ms. Biondo is like the Oprah Winfrey's of the world. Or we want to create opportunities for those that are, quote, less fortunate. The problem with that, Your Honor, on this pleading stage motion, at any level of scrutiny, they have no evidence. And that's why we're seeking to reverse. It's a matter of objective. I'm sorry? It's a matter of looking at this category objectively, not subjectively. Not whether this was their actual motive, but whether, as an objective matter, it could be under the law. Isn't that right? Well, Your Honor, the evidence needs to bear that out. No, an objective matter, you just look at it. Is this something they could have done as an objective matter? Whatever they were thinking. But there is no rational basis, even under a rational basis review. If I recognize that there are certain people that are being discriminated against, and I exclude and discriminate against the discriminated, that doesn't justify the means at all under strict scrutiny. It doesn't justify it under intermediate scrutiny. And it is not rational to set up a... You're not excluding the disadvantaged. Oh, Your Honor. No, you're not giving an advantage that other people... Within the group of disadvantaged, you're arguing that constitutionally it's an all or nothing thing. Once you adopt a DBE program, you may not exclude anyone who I, as a lawyer, can argue is still a subject of discrimination. That's your argument. No, it's not, because what Judge Kelly asked me about this particular program, and why I want to focus on the Kansas City program at issue, that's what we're talking about. In this particular program, there's actually a section in there that confirms my client, Mark 1, Ms. Biondo, was subject to discrimination. Because they need to certify them as being a member and included within that. The director has to look at their application, look at their submissions, and either A, confirm that they were or were not. And they were under lawsuit by a non-disadvantaged contractor, claiming this was unconstitutional favoritism. Well, so A, there's... So they're dealing with that. Well, A, there's no evidence... You want to make sure that they're caught with both sides. They're in the middle of both sides, and they lose to both. Not true, Your Honor. And I will tell you that this decision to incorporate the personal net worth was before that lawsuit that you're referencing, the Stakeo case. Which is not part of this record. I wasn't part of it. They've been subject to that lawsuit since 1996. An add or end lawsuit. No, they... Discrimination on the basis of a protected race or gender. Right. Affirmative discrimination is bad, period. It absolutely is, Your Honor. And what I'm suggesting is that... So they have a DBE program that has to deal with defending against that claim. No, so the DBE program, the Disadvantaged Business Enterprise Program, does not deal with discrimination. It doesn't. There is no certification in that statute that says that for qualification under the DBE, that that person must show that they are discriminated against. So that is a different evil than what we're dealing with. We're dealing with an actual program that requires, as part of its inclusion, a certification by the director that my client is subject to discrimination. Which is... And that's subject to a lawsuit that you can't have that as a criterion, constitutionally. You're basing a program on race and gender characteristics, and that is... I'm suggesting to Your Honor... That's the other side. That's the STACO side. That is drawn from the Adirondack line of Supreme Court presidents. I understand, but you still have to... There's either both over-inclusiveness, which is what STACO was the litigation about, and then there's a separate doctrine for under-inclusiveness. What is that? Where do I find that doctrine? Well, so... Other than, I mean, Jana Rock takes care of that. There's several cases cited in our briefs that, including... A Circuit? I believe that the Johnson case cited in our brief talked about the under-inclusiveness doctrine in the context of a freedom of speech. What I'm suggesting to you, Your Honor, is that the under-inclusiveness doctrine is well supported in every constitutional arena. If what you're doing is... The question about what basis to apply was based on Jana Rock. No question. A couple of things about Jana Rock that I really want to make crystal clear to you, Your Honors, on why this was not an appropriate case to dismiss at the pleading stage. One, Jana Rock was a trial on the merits. It wasn't a pleading case. Two, Jana Rock, there was no evidence that the people that were excluded were being disadvantaged, discriminated against at all. There's no evidence of that. So, in fact, that's the exact opposite here. There's undisputed evidence that my client is being discriminated against. In this Court's decision in Sherbrooke, footnote four, I want to talk about this Court's decision and why that's important in the context of this case. Footnote four says that it is absolutely important for the narrow tailoring aspect if the program includes those that are not truly disadvantaged. Those were the words of this Court. Well, in this case... I am citing the dissenting opinion and entering. I'm sorry? Citing the dissenting opinion and entering. The point is, is that this Court, Jana Rock, everybody has... There's other courts settled in our base have acknowledged. If a statute is under-inclusive, it is subject to constitutional attack. By excluding those that are sought to be protected by the actual program, the recipients of it... By excluding those, that's under-inclusive. And so, at the pleading stage, we were wanting to... We alleged that claim. We believe it complied with FRCP rule eight. So, if Congress fails to include in the highest tax bracket everyone whose net worth warrants that unequal treatment, that's an under-inclusiveness that's potentially unconstitutional? No, because we're dealing with a Kansas City statute that deals in Kansas City. And this Court in Sherbrooke, one of the things that... I think Congress is now subject to... No, but... Let's say the state of Missouri then, if you'd want to limit it, keep... The point is, is that what this Court said in Sherbrooke and other cases, is that you must be looking at the actual place. Merit-tailoring to the actual place where the statute is... Sherbrooke didn't say that. That footnote is recognizing a descending opinion that would consider that relevant. The point is, is that for the merit-tailoring analysis, the Kansas City market, or what's happening in Kansas City, wasn't considered at all. When you look at the disparity study, what they did is, they grabbed, blindly, without any analysis, without any consideration of its application to Kansas City, the $1.32 million standard that exists under the DBE program. There's no evidence in this record to indicate that that's an appropriate limit in Kansas City for the men, minorities, and women business enterprise program. There isn't. You'll search the record. There's not a scrap of paper indicating that the city of Kansas City considered that in relation to what's happening in Kansas City, where people are actually being discriminated against on the basis of gender and race, including my client, who they've certified every year. So, I guess the point is, is that it's not appropriate to dismiss the case on the pleading stage when they didn't put any evidence in the record. Your time is gone. Okay. I thank you very much, Your Honors, for your consideration of this matter, and I appreciate the time to speak with you. Thank you. Thank you. Mr. Ertz? Good morning, Your Honor, and may it please the Court. The city's MBE-WBE program is constitutional. The personal net worth limitation in the city's MBE-WBE program, which is taken from the Federal Department of Transportation DBE program, is constitutional. This Court's case and decision in Sherbrooke Turf versus the Minnesota Department of Transportation does the necessary work for the analysis in this case. In Sherbrooke Turf, as the Court is aware, the personal net worth limitation was found to be an important, narrow-tailoring measure for both program flexibility and to minimize the impact of the program on third parties, both which are required for strict scrutiny and narrow-tailoring. The city believes that the Why is the net worth requirement not a violation of the duty to do equal justice to the rich and to the poor? Well, Your Honor, the goal of this program is to make sure that those disadvantaged individuals who The people who have been excluded are disadvantaged. I'm sorry? The people who are being excluded are disadvantaged, or at least for the purposes of this record, we assume they are. Isn't that right? I believe this So why do you keep them out just because they're Oprah Winfrey? Well, I think, like I just said, for narrow-tailoring purposes, the personal net worth limitation allows for the program to be flexible. But what's the rationale? Because it's not likely they've been discriminated against? Or because you don't have to do justice all at once under Williamson against Lee Optical? Why should a Sultan of Brunei be excluded if he's been I think the central purpose of the program is to help as many disadvantaged business entities as possible. And when those that become more successful no longer need the program, or may not need the program I don't think they don't need it. If they're entitled to it, it's a matter of having been excluded. Well, I don't think anyone's entitled to this program as Judge Locum They would be, except for the fact that they've been excluded on some basis, other than the fact that they've not been discriminated against. Right? Yeah, and I want to make one point clear. Mark I is still allowed and permitted to bid on city contracts. It has been in the city's program for 25 years. It has established a reputation in the Kansas City area and the surrounding area. It can bid on government contracts and contracts that receive the tax incentives. All it now cannot do is participate in the city's program to be counted toward the goals for minority and women business participation in the program. So it's not excluded from the ability to contract. It's only not included in the Oh, I understand. Counting toward the goals. I understand that. Well, what does being certified mean then? Being certified means that you are on the directory and a contract can be awarded to you to count toward the MBE and WBE goals that are set for individual contracts. And if you're not on the directory, then your participation in the contract or award of the contract cannot count toward the goal. And if they simply took them off, if they didn't certify, would that penalize Kansas City under the federal program? Well, I think Kansas City administers the federal DBE. And Kansas City does not include them in its program. Does the city lose something? Does it lose federal money or blessing or something? I don't know the answer to that question. But what I can tell you is Mark 1 is not a DBE in the federal program. The federal program has the personal net worth limitation. The federal DBE program does. And Mark, from what I understand, we've never been given the evidence that Mark 1 doesn't. What the total assets are, but Mark 1 hasn't turned those over. If I understand correctly, and this was the basis of some other litigation, I think the personal net worth is just truly that, right? Personal net worth. It's not the success of the business itself, correct? I think there may be a correlation, but yes, it is personal net worth excluding. So could you have someone who was a wealthy person, let's use a Mark 1-like example, an individually wealthy woman who wants to start a woman-owned business, maybe hiring women and other folks who are otherwise disadvantaged in a particular field, is she prohibited from being certified even though her business is a startup, it's small? In this program, yes, but the city has a small business enterprise program that doesn't put any preference. So how does that, again, maybe this is dovetailing a little bit on Judge Arnold's question, which is how is that promoting the city's goals for the program? In other words, you've got someone starting a startup, they're disadvantaged in, I don't know, let's say they're women plumbers instead of electricians where they're not traditionally out there, and the city is benefiting from the sort of breaking down of the gender barriers. So is that something that you kind of have to factor in in terms of whether this personal net worth really is an appropriate narrow tailoring of this particular program and its goals? In the program's goals is, I think, to spread out the ability for minority business enterprises and women business enterprises and other socially disadvantaged business enterprises to participate in the city's contracting process. And for someone who has the assets, personal assets to start a company, may be able to do other things business-wise, such as underbidding a project in order to get the business, that's somebody who doesn't have the money. Yeah, because I understand the battle between sort of the personal net worth and the value of the business. But in a way, what you've been saying is sort of the goal is to get minority-based and women-based businesses up and running. And if they're doing great, that's no longer sort of the concern. We're going to move on to help other folks. But personal net worth is a little different. So you made your money someplace else, but in this particular business, you're not getting the contracts because, according to you, it's woman-based. I think that's sort of a mix-up of the money, right? Sort of where the money, where the wealth is coming from and what its source is. In response to that, I don't think that makes the city's program unconstitutional because it doesn't go further to include those types of instances. This personal net worth limitation, as recognized by a number of circuit courts of appeal in this country, have cited this personal net worth limitation as an important narrow tailoring measure. And what's it narrowly tailoring? In 30 words or less, how is it narrow tailoring your program? Well, I think to cite directly from the Sherbrooke case, it minimizes the impact on third parties that cannot participate in the program. That counts as narrow tailoring, and it makes the program flexible, that it's not a presumption that everybody who's of a certain social disadvantage, race, or gender is automatically entitled to participate. And that's required under narrow tailoring. There have been a lot of cases that recognize that as a narrow tailoring. Recognize personal net worth as narrow tailoring? Yes. Trying to avoid the kind of objection that people who are being excluded are going to raise because of their gender. Exactly. The Slater case out of the 10th Circuit, the Western States case out of the 9th Circuit, the 7th Circuit Midwest Fence case, and then there's a case out of the- It's kind of a safe haven argument. For the city here? It's kind of a safe haven argument for the city. Well, I think that's exactly what the disparity study said. It said to make this program even more defensible to a constitutional challenge like the city's faced- Less vulnerable. Yes. That the inclusion of this personal net worth limitation is important. And that's what we've done. And so I want to address in this case why this case is appropriate to dismiss at the pleading stage. And there are two points I want to make. First is what Mark 1 is not challenging in this case. They're not arguing the city's MBEWB program does not serve a compelling government interest if the court decides to apply strict scrutiny to the entire program. Second, Mark 1 is not arguing the city's MBEWB program as a whole lacks a sufficient basis in evidence. That's been conceded or pleaded in the first amended complaint at paragraph 15. And that's never been amended. And you can see the disparity study, which is included in the record at appendix 106 to 251, sets forth the adequate basis in evidence to establish the city's MBEWB program. The challenge here is just the personal net worth limitation. And the city believes that argument should be rejected. The personal net worth limitation is not the government program in this case. It's a legislative choice to narrowly tailor the government program. The government program can be found in the city's code. Who's the legislature you just talked to? Legislative choice of the city council of the city of Kansas City. The city council made the choice to include the personal net worth limitation. And so that makes it better than if the city administrator had done it? No, I think when it's... Or the executive branch authority would be? Well, so if it's... I think this court mentions it in Sherbrooke as an aspect of narrow tailoring. If there's a limited duration on the program, which the city council, as a legislative choice, would put an end date of December of 2022 unless there's a further disparity study conducted, that purpose is done by the legislature. And when the legislature passes something, it involves the citizenry and further debate on whether the program is still necessary and what further aspects of the program may need to be added or amended to make the program work even better for the entities and individuals it is intended to serve. Does an entity have to file or apply for certification every year? Is that a yearly? So the initial certification process is a little different than the annual recertification process. And is it the annual recertification process? Is that the point at which the entity says, I have or we have, it has experienced discrimination? And at the initial... At both. Yes. And so really, I mean, if you just look at this, then this narrow tailoring is... Would you describe it as, I guess you've said, a legislative choice to say, well, we recognize that this group of people has identified as discriminated against. I don't think there's anything in the record to counter that. But we've chosen to carve out a smaller group of that discriminated category by eliminating the personal... Or by eliminating those who exceed the personal net worth. I think that's right. And if there were a further legislative choice to, because the program wasn't working properly or too many people were excluded because of the personal net worth limitation, that would be subject for further debate and further amendment, if appropriate. But in this case, based on the case law, the city's personal net worth limitation is not unconstitutional. And just as a final point, this is race and gender neutral, the personal net worth limitation. It is not... I think if the personal net worth limitation were to have some sort of impermissible line drawing based on a protected class, then the city could face a strict scrutiny challenge to it. But that's not this case. This is a personal net worth limitation that applies at a $1.32 million cap to anyone who could participate in the program, regardless of any protected class. That's what you're really saying. It's not a race-gender remedy. The remedy is the city's MBEWB program. Right. The PNW is not a race-gender remedy. It is a narrow tailoring measure to make sure the remedy is not... It's a narrowing of what is a race-gender remedy. Correct. Which the Supreme Court has required the city to do. And for those reasons, we would ask that this court affirm the district court's judgment and dismiss this case. Thank you, Your Honors. I'd like to have a break, too. Is there rebuttal time? His time had expired, Your Honor. All right. Very good. The case has been well briefed and argued, and we'll take it under advisement. The court will be in recess for 10 minutes or so.